All right, Mr. Isipronsky, am I pronouncing that right? Good morning, Your Honors, Garrett Pronsky and Jason Kathman for the petitioning creditors in the Baron case. I've been practicing law for 31 years, and I have to say it is still as much of a thrill and more importantly an honor to be before this court. Before I begin, I would like to tell the court what I would like or my request of the court, which is basically what we are seeking is a reversal of Judge Lindsey's order, reversing the bankruptcy court's order for relief with an instruction to Judge Lindsey to remand the case back to Judge Jernigan for a determination of the issue of bona fide dispute under Section That raises a question I have. As I understand the lengthy procedural morass of this matter, after our court rendered its clarifying opinion in December 2012, I believe, yes, and you had already moved, you had already filed for the involuntary bankruptcy, the bankruptcy court held a hearing. It held that our fee, the district court's fee order required that there was no bona fide dispute, and therefore you had standing. Then it went on appeal after it held a merits hearing, it went on appeal back to the district court, and the district court held that our fee order was invalid, the district court's fee order, I'm sorry, Judge Ferguson's fee order was invalid because of our court's opinion absolving the receivership, which was still being dissolved. It would seem that on appeal you would challenge Judge Lindsey's ruling that our court invalidated the fee order, but you don't seem to do that on appeal. You just seem to be saying, well, send this back to bankruptcy court and we will prove that there's no bona fide dispute even without the fee order, and I don't see, you don't seem to have even briefed ERA in ruling the fee order invalid, am I correct? You are, Your Honor, and that's a very good point, and it's something that has occupied a tremendous amount of discussion and time on our part to come to what we thought was the correct view coming before this court, and I'll tell you the reason for that is basically that debate or that issue as to the validity or not of that order is an exceedingly complex issue. I think there are two sides to it, and to be candid with the court, I think that the other side has good points to it. I think we have good points to it. I think that ultimately whatever this court would rule on this issue, it's sort of a classic conundrum, and I'm not sure there's any satisfying opinion or result that can come from wrangling with that issue. It's an extremely, as you, I think, started out, this case is a procedural complicated morass, and that order is sort of in the heart of that complexity. I would like to, I'd like to argue that issue, but because we have limited time, I think that the issue of the disposition of this case by Judge Lindsey with essentially an instruction to Judge, essentially a rendering of the decision by instructing Judge Jernigan to dismiss the case, that's a problem that I don't think is solvable, and I think it's a fairly simple problem. It's a simple problem, has a simple solution and a simple discussion. Okay, so let me see, continue the procedural story that Judge Barksdale began, which is there was a motion for summary judgment on the 303B point. Is there a bona fide dispute or not? You all entered into a stipulation that I think is very important at record page 1732 that we're going to narrow the 303B question to up or down on the fee order. Is the fee order preclusive or not? And that was what was decided in the summary judgment, and Judge Jernigan said, yes, it's preclusive. Now let's try the 303H question of paying debts as due and so on. And so you all had a trial on the 303H. Judge Jernigan ruled, you know, not paying debts as a come due, whatever, whatever. And so here we are. So your point, as I understand it, is if we were to, so Judge Lindsey having disagreed on the fee order point and essentially vacating the summary judgment on the 303B, we still have the sort of other arguments not relying on the fee order that Barron has never really had a legitimate dispute here. And that thing from both sides hasn't been fully litigated anywhere. Is that your point? It's exact. And that cuts in his favor to some degree, too. We can't go in the record and go, well, he didn't contest the fee order back when it was entered. We can't. We focus on that summary judgment proceeding, which was narrowed to one issue, there being other issues, i.e., does he have counterclaims, does, you know, was the amount in dispute. And all of that really wasn't litigated before Judge Jernigan, this go-around. And that's what you're saying should happen. Exactly. And, Your Honor, you raised the stipulation. That's the critical document in this case. It's at page 1732, 1733 of the record. And I was going to address that in my argument this morning. That stipulation essentially does three things. And you know, a lot of times I go back and I look at a stipulation or something I've that ends up having significance later, and I wish I had reworded something in retrospect. This is not one of those documents. This document, if I were to write it today, knowing I had a Fifth Circuit argument in 30 minutes, I would have written it exactly the way we wrote it for purposes of this trial. That stipulation is very, very specific. It says, as you say, up or down, it says the sole issue that's being determined on summary that forecloses the issue of bona fide disputes, the words that are used in the stipulation. That is the sole issue, sole meaning only, sole meaning exclusive, sole meaning that there was nothing else that was tried with respect to that summary judgment. There's no full record. There's only one issue that's being decided on standing, and that is the issue of is this district court order enough to do one thing or another? Then, more importantly, or perhaps as importantly as that first paragraph of the stipulation is the second paragraph of the stipulation, which says that in the event that it's not enough to say that you've got this district court order that's controlling, the petitioning creditors reserve their right to file another summary judgment motion, and they reserve their right to present further evidence to the court of bona fide disputes. I wish I had made it this simple in the briefing. I had to go ferret this all out on my own, because a lot of this didn't make sense until I went and read the stipulation and really focused on it, because then it makes sense that the way the thing progressed, the trial, if you will, that Judge Jernigan held wasn't on this, wasn't on 303B. It was on 303H, right? Right. Okay. Yes. It was definitely bifurcated, and that bifurcation has continued in that stipulation. So you're not contending that Mr. Barron, in your remand, your world of remand, Mr. Barron is not precluded from coming in and saying, here are my counterclaims, or here's my problem with this bill that you sent, you charged for time you didn't do, or your rates are too high, or you didn't return value, or the Johnson versus Georgia highway factors, or anything else, right? That's exactly right. Okay. So you're envisioning a world in which you go back to Judge Jernigan and all that is on the table? That's correct. Okay. We viewed, you know, any time you have an involuntary, you've basically got two issues. You've got the issue of 303B, which we call the jurisdictional issue or the standing issue, and then you have what we call the substantive issue of generally not paying its debts as they come due. The way we decided to handle it in this case is to bifurcate it. We thought we had enough with this district court order, and we thought Judge Jernigan would agree that we had enough with this district court order to not have a big trial over bona fide. We had over $800,000 worth of claims on eight different lawyers. We never dreamed we were going to have an issue of do we have three petitioning creditors with claims of $14,000? And the quickest way to get from point A to point B was just to say the district court has already ruled on this, and it's collateral estoppel. As it turns out, according to Judge Lindsey, we were wrong. Now I'll tell you Judge O'Connor, one of the other federal district judges, said that that order does continue in a different proceeding, and that's in the record, but it was in a different context. So I think that gets back to my original point, which is that we could sit here and debate all day the validity or not of that district court order, and that's why we chose to look at what the really simple problem here is and the simple solution. And I will say in Judge Lindsey's favor that I think he was dealing with a lot of complex issues, and I think that he made an error, a very simple error, and perhaps an understandable error because he's not an appellate judge, he's essentially a trial judge, and he made what is essentially a very simple appellate mistake, which is when you have a loss on a summary judgment, rather than to say, oh, the summary judgment wasn't enough, you send it back to have a trial. But instead, what he did was he essentially rendered a dismissal in a case where Judge Lindsey made an initial finding of fact, which the appeal court shouldn't do, and the worst part of it was that he was making that initial finding of fact based on an incomplete record. And it's an incomplete record by definition because we set the rules of the game in the stipulation, and we said the sole issue that we're going to resolve is this summary judgment issue. Well, I'll tell you, I don't know, this case could benefit from something other than y'all continuing to file these motions, because I was not on the panel that decided the 2012 case, but I was on some of those prior. I mean, every week it seemed like we were getting some kind of something from somebody who was upset about something going on in Judge Ferguson's court. Y'all could use some rationality in this, and so it would be nice to see that. I'll just say that. It's gratuitous, but I'll say it anyway. I appreciate that, Your Honor, and I will tell you, petitioning creditors had an involvement in the receivership, and I know there was a lot of fighting back and forth, but you won't find any motions from us in that case, I think, period. But I hear you. I think it's . . . Well, you should have sent Mr. Vogel up there to take the bullets, but it was . . . I mean, the bullets were flying everywhere. I don't know that there was . . . Actually, Your Honor, we had nothing to do with the receivership being filed. We were as unhappy about the receivership as anyone. It kept us from being paid for a number of years while money was used for other things. We were as unhappy about the receivership as anyone and didn't support it, but I completely understand the Court's comments. So basically, this is the issue that we see. We did a stipulation where we basically limited our issues. We reserved our rights to make further arguments in the event that issue wasn't enough, and what I . . . When you say we, who is we? Petitioning creditors. Not the person you'd put into involuntary bankruptcy. It wasn't a joint stipulation. It was a joint stipulation. It was or was not? It was. It was? Okay. It was a joint stipulation signed by both sides where we all reserved our rights, and in the event that the summary judgment was not granted, we reserved our right to raise further factual issues in a subsequent summary judgment, and they reserved their rights to dispute those with evidence. And the third paragraph of the stipulation said we reserved our rights to make further legal argument with respect to the standing issue and Section 303B specifically, and they reserved their rights to make counterarguments and to raise disputes. So if this matter had been . . . let's say we had lost in front of Judge Jernigan on summary judgment rather than prevailing on summary judgment. If we had lost, there's no question in my mind that would not have been game over. We lose summary judgment, and, therefore, the case is dismissed. If we had lost summary judgment in front of Judge Jernigan, she would have come out with a ruling, and she would have said, sorry, petitioning creditors, you lose on summary judgment. Now let's go have a trial. And Judge Lindsay could have done no better as a district judge on appeal when he reversed that summary judgment. He essentially said that summary judgment is no good. You've got to go back to trial. Not you lose on summary judgment, game over, which wouldn't have happened if we had lost in front of Judge Jernigan. It would have been you lose on summary judgment, not game over, but let's go have a trial. And if that isn't clear enough under the law, we made it clear with stipulating and precisely finding what the rules of the game were. And our argument, Your Honors, is that the rules of the game were not followed by Judge Lindsay. And, again, I don't say that disparagingly. I think that this is a highly complicated case, and I think he was focusing on a lot of the complex issue, and I think this just really just sort of escaped him. And so what we . . . A motion to reconsider? We didn't, and that's a good question. The reason that we did not do that is we were concerned that because of Judge Lindsay's rulings throughout the Barron matter where he appeared to be doing everything he could to wrest the Court away from all Barron matters, that he was looking for reasons to just get rid of this Barron case, and we decided just to come up here instead. All right. Thank you, Mr. . . . Thank you very much. You've saved time for rebuttal. Mr. Simon? Good morning, Your Honors. Like Mr. Pronsky, I've been practicing for thirty-seven years, and I've been before this Court on numerous occasions, before the en banc Court. It's always a pleasure to be here. I will always remember this for the rest of my life as some of the high points in my career, being able to argue in front of this venerable Court. And, Your Honor, in this particular case, I think Mr. Pronsky . . . I want to start off by saying that I think Mr. Pronsky has caused his own problems here, and the . . . first of all, this Court ruled in the Netsvier v. Barron case that the District Court did not have It couldn't have been clearer. Somebody didn't read the email, and we spent . . . Mr. Pronsky spent and wasted six months trying to get an order for relief based upon an order as to which the District Court had no jurisdiction. You know what? That may be true. I don't know that that matters now. To me, the question is, it appears that everybody agrees, or at least isn't willing to contest that Judge Lindsey was correct that the fee order is nugatory, therefore doesn't have preclusive effect or anything else, and we don't care whether Mr. Barron had a lawyer that day or anything, because that's just nugatory. It's gone. Done. But, to me, that doesn't answer the question of is there a bona fide dispute or not? And doesn't that need to go back to Judge Jernigan to be decided? You can show your counterclaims. You can say these guys overbilled. You can say whatever it is you have to say. But isn't that, like he said, you lose a summary judgment, you get a trial. You don't get a—when you're the move-in, you don't just get poured out. The answer is no. Okay. Explain that. Okay. There was a motion to dismiss that was filed by Mr. Barron on January 9, 2013, a motion to dismiss the case under Rule 12b on basis of standing slash jurisdiction. That motion was carried along with the summary judgment hearing. The stipulation that you've all talked about related only to the summary judgment motion. On its face, it's based only on the summary judgment. There was a response to that motion to dismiss. There, in effect, were cross motions that were considered by the court on the issue of whether or not there was a bona fide dispute as to amount and as to liability. And when the court got done considering the summary judgment motions and the motion to dismiss, the court denied the motion to dismiss, granted the summary judgment on the very same day, March the 5th, 2013. So these issues were all in front of the court, not just the issue of whether the order was preclusive. All of the issues that were raised in the motion to dismiss were before the court. And there were issues that were raised in that motion to dismiss that went well beyond whether or not the order was preclusive. And those issues included, but were not limited to, the ones that I'm going to discuss with the court today. The issue of whether or not the involuntary bankruptcy could have been filed in violation of a district court injunction in a receivership that was not within 120 days of the filing of the bankruptcy. This was a receivership that was in existence for two years at the time. A well-seasoned receivership. And there was an injunction. And Mr. Pronsky and his clients went forward and violated, in essence, this court's opinion and later its mandate by filing an involuntary petition. And at the date and time of the filing of the involuntary petition, that injunction was still in effect. Resorts should have been made to the district court for relief from that injunction. And the cases that are cited by Mr. Pronsky relating to that particular issue all deal with receiverships of recent import. In other words, receiverships that were within this 120-day period that's referenced in 303H. 303H, in essence, provides that if you file a bankruptcy within 120 days of a receivership, your insolvency issue is determined. You are insolvent. Not so with receiverships that are outside the 120-day period. Now, the second issue, which is a matter of law issue, which this court can consider in not remanding this case, and let me also just digress for a moment, there never was a request for a remand. If you go to the appellate briefs of Mr. Pronsky, filed with the district court, he never advised the district court that the district court should remand this case in the event it reverses. He also did not file a motion for rehearing while the district court had plenary jurisdiction . Instead, he let the 15-day period expire under bankruptcy rule 8015, filed his notice of appeal, and took away from Judge Lindsey the opportunity to consider whether or not to remand, took away from us the opportunity to argue and develop the case. Now he wants to go back down and he wants to try it again. I don't understand your point that they didn't specifically ask for a remand. If there's been a summary judgment and you get it reversed, then of course it goes back to whatever the lower court is. Well, that's true, Your Honor, if all we were talking about here was a summary judgment, but that's not all we're talking about. There was a motion to dismiss. I don't see in the district court order, and I've looked through this very detailed district court opinion, I don't see reference to your motion to dismiss, and in fact, the court says before the court is their appeal and then the intervenors' appeal. It doesn't mention the motion to dismiss. Exactly, and that's the whole point, Your Honor, because the issue was not addressed by Mr. Duponsky in terms of a remand. We did raise the issue. Why did he address the motion to dismiss when the bankruptcy judge didn't grant relief on it and Judge Lindsey doesn't mention it? Judge Lindsey didn't, but we did in our briefing, and just because Judge Lindsey did not consider it in his opinion under this court's recent opinion in Greenhill, that doesn't foreclose us from raising that on appeal. That's very correct, and I quickly went back through your brief, and I don't really see you pressing that point in your brief. I could certainly be wrong. I see where you reference filing a motion to dismiss, you have the wrong, you know, you file that, you have the wrong year listed for it, but that's immaterial, but I don't see you urging that as a basis for not having it. That was urged in the intervenors' brief, Your Honor. The motion to dismiss issue was raised in the intervenors' brief, and we raised the issues under 303H that, and I want to get to this before my time ends. I don't know how much time I have left, but there is one point here that I just want to make sure that the Court is fully aware of. Under 303H, this is what the bankruptcy court ruled under 303H. She said, and I quote, but the final question in this Court's mind is whether this should all be analyzed differently since Mr. Barron's assets had been tied up in a receivership for almost three years. And she goes on to say, Barron has a persuasive argument. The Court does not believe that Mr. Barron has a persuasive argument in this regard. The evidence reflected that there was more than enough value from the assets in the receivership to pay the legal fees if Mr. Barron had wanted to pay the fees and cease the receivership at any time. In other words, she's admitting that there was sufficient assets to pay the debt so that the insolvency test could never have been met, but then she makes the incredible statement that we could have dismissed this receivership and paid the debts. How could we have dismissed this receivership and paid the debt? We didn't have the right to dismiss this receivership at all. We tried to get the receivership dismissed. I'll give you that. Every week. Every week. And we couldn't. And so we did not have the ability to pay these debts. In fact, we were enjoined from paying these debts. On December 18, 2012, we were enjoined from paying the debts. And maybe this isn't relevant to the appeal, but it's relevant to the case. Is it your client's position that none of these fee bills at all are valid? That he doesn't owe any of these lawyers a dime? My client's position is that with respect to the fee bills that are being asserted by the petitioning creditors, that those claims are in large part meretricious in nature and that there are counterclaims that are to be filed with respect to those fee bills. Yes. And I want to just point out to you that— If you were to prevail—I mean, your theory of the world is, I guess, that the bankruptcy gets dismissed. What happens next? I mean, these lawyers aren't going away. They think they're entitled to their fees. You all think they're not. What happens next in your world? In my world, we litigate the question of whether or not they're entitled to their fees in state court. Where? State court. Okay, so they have to file a lawsuit. They've already done that. These cases are all teed up. Mr. Pronsky has already gone to judgment. We've superseded the judgment, and we're on appeal on his claim. So all of this is teed up in front of a state district. In Dallas State District Court, what is the point of going back to a bankruptcy proceeding now after all of this is over? We wouldn't know because we don't know the status of the receivership, which the briefs say is still— It's still outstanding. Let me finish, please. Yes, Your Honor. It has not been dissolved. I guess they assume that the only way they're going to get any money is through a bankruptcy proceeding. I don't know how they could think that they would get any more money out of a bankruptcy proceeding. Because it might have some money still in that receivership. Sir, I don't know, and I can't do anything about that, but I'm not going to challenge why they felt involuntary bankruptcy was better than state court. I guess they're just trying to get paid. Your Honor, this court told them to go back to state court and litigate their claims in state court on December 18, 2012. They did not do that. Well, and then our court filed a clarification opinion and said all orders that were in place remain in effect. So as we say, it's a tortuous trail. It's a tortuous trail, Your Honor, but there's one thing that is certain. The fee order, the court did not have jurisdiction to enter the fee order. They're not arguing that. They're not pressing that point here. They're just saying we lost on summary judgment. We have a right now to go to trial to prove there is no bona fide dispute. I'm suggesting to you that there is a bona fide dispute as to amount, and Judge Lindsey, in his opinion, addressed that. There is a bona fide dispute as to amount, and this court, one of the arguments that this court made in its December 12, 2018 opinion is that these were unmatured claims. It's law of the case. But how can Judge Lindsey dispute that when that wasn't the issue before him? Before him was this joint stipulation. How can he dispute that? They haven't had a chance to put on their proof. Your Honor, there were other issues that Judge Lindsey could have addressed in his opinion, and he chose to limit his review to the fee order. That does not mean . . . Okay, and that is focused on the fee order. I think Judge Lindsey, frankly, my personal view, can't speak for my colleagues, is that Judge Lindsey was right about the fee order. It falls with the receivership falling. But that said, they still want to come put on their time records and their contracts and whatever, and then you've got to do more than just say these are meretricious, whatever that means here, and we have counterclaims. You're going to have to come forward with some kind of evidence and proof, and then we'll deal with that. Or Judge Jernigan will, and maybe it will make its way back to us. Your Honor, there are other issues that are matter-of-law issues that were raised in the motion to dismiss that are dispositive. Some of those . . . But we did a ruling from Judge Lindsey on those, and I don't see why we should be running around taking up issues the district court didn't take up. The district court did not take those issues up, Your Honor, for reasons which are unknown to us. We raised them in our briefing to the district court. The district court chose to limit its decision to the fee order. That does not foreclose our right to come before this honorable court and raise these matter-of-law issues. Well, I haven't seen you really adequately briefing them saying, based on our motion to dismiss as a matter-of-law, this should happen. These briefs are, frankly, very difficult to follow. Your Honor, take a look at our 303-H argument on the insolvency issue. That is a matter-of-law issue. It's on the page in your brief. Your Honor, I can't tell you exactly what page it is in my brief, but we make the argument in our brief that page 22, Your Honor, of our brief. I don't see much briefing there. I've got it. Your Honor, the issue does not require a great deal of briefing. The issue is whether or not we had the ability to pay the debts as they became due. Okay, but even before the receivership, I agree that while all of the assets, and I remember this thing about Mr. Barron being in his apartment with no electricity and all this stuff, I agree during that period he can't pay his debts. But there was something that precipitated that. How we got to the receivership in the first place was he wasn't paying his debts. And it just got worse after the receivership because apparently he kept hiring lawyers or something. I don't know. I mean, I've just never seen so many lawyers. And so I think that is a conclusion that could be reached. Thank you. I mean, I think there are two matter-of-law issues that the Court can decide. One, whether the filing of the bankruptcy violated the injunction, and two, whether under 303H we could have ever been in a position where we could have paid the debts with Judge Jernigan, admit were sufficient. All right. Thank you, Mr. Simon.  Mr. Payne. Thank you, Your Honors. Mr. Payne, you look like a pretty reasonable person for someone that filed as caustic a brief as you filed. It's about as caustic as I've ever seen. Well, I believe very passionately in my position, Your Honor. This is frivolous? I believe it is frivolous when you look at what Judge Lindsey said. He clearly states in his opinion that as a matter of law, the basis upon which Judge Jernigan found that there was no controversy is inaccurate. And I think he got that right, Your Honor. I think he's very direct about that fact. He says, look, the fee order and the receivership are inexorably tied. If the judge who created the receivership didn't have the authority to do that, he didn't have the authority to create a fee order. But no one's saying that. I understand that. But that's the basis upon which 303B was decided by the judge. Right. But Mr. Pronsky says, based on the stipulation, which I went and pulled from this lengthy record, we want our chance to say, look, here are our fee contracts. Here are our timesheets. This is our undisputed claim. And then you guys could come in with your evidence and say, you know, whatever, whatever. I don't know. I mean, all I know is you all have made allegations. I've never seen what exactly the deal is, what the malpractice plan is. I'm not a party to the bankruptcy at this point. I represent the two LLCs, NovaPoint and Quantico. Where do you practice law, Mr. Payne? Dallas, Texas, Your Honor. Well, you don't list that on your brief. I'm just curious where you practice. I apologize. I didn't realize I had— You left off your address. You didn't want us to find you. Okay. What is it that you want? If the fee order is invalid, no one's really fighting that, what is your point? Then the judge is correct. Judge Lindsey got it right. There is no basis to go forward in bankruptcy. But if you're not in the bankruptcy, why do you care? Well, because what Judge Jernigan has repeatedly tried to do is take the very assets which are in the receivership, including those which belong to my client, NovaPoint and LLC, and which are for the last several years the sole and exclusive basis for cash coming into the receivership and use them in the bankruptcy court. There are claims that the Fifth Circuit got it right. We never should have been in receivership. We should have been—the court had no authority. The receivership should be wound up more quickly and get your—is this the domain names and all that? Yes, it is, Your Honor. And my clients are the ones who own those. And every day we have now had those domain names turned over to us. But we risk, because of what Judge Jernigan has said in the past in her orders, of being hauled back in. So wait, you've got the domain names back? We have the domain names back. I understand you're worried about what she might do in the future. But what is presently a matter that you want relief on? I want the bankruptcy discharged completely. Because you don't like the way she's been ruling? No. Because she has clearly stated that NovaPoint and Quantec should be part of the bankruptcy estate. And that's contrary to what the Fifth Circuit decided in terms of the authority of the receiver and the judge when the receivership was initially instituted in 2000. How is that before us on this appeal? Did Judge Lindsey rule on that? Judge Lindsey has stated that there is no basis for the bankruptcy. And as a matter of law, they are not creditors who have disputes that are not subject to bonafide. The involuntary bankruptcy was filed against Barron or Barron, however it's pronounced. Jeff Barron. It was, Your Honor. It wasn't filed against your entities, was it? No, it wasn't, but as part of the proceedings in the bankruptcy court, Judge Jernigan has made it very clear that she and she wrote a sua sponte report to the district court saying that NovaPoint and Quantec and all of their assets should be turned over to the bankruptcy as part of the Jeff Barron estate. That's what I fear is going to happen, Judge. That's not an issue before us today. No, but what is an issue before the court is the ruling by Judge Lindsey. And as a matter of law, he said she was wrong. And they're asking for relief that they didn't ask for. They didn't tell the judge, look, Judge, we understand your order. You have the opportunity to do what's right and remand it and let us go. And under Keenan v. Tejeda, when you don't give the district court the opportunity and you don't address it with the district court, the relief that you're seeking, you're precluded from coming to this court and asking. They were the affilee in that court. Affilees don't typically need to seek relief other than affirmance. And so if they lose, then the court is supposed to remand it or render as appropriate. Here the appropriate, in their view, is remand. I'm sorry. I'm taking. No, no, no, that's okay. But the point is he had the opportunity and chose not to. He affirmatively stated to the court we chose not to do that. He had the opportunity to tell Judge Lindsey, look, you should remand it. You should let this go back to Judge Jernigan. They didn't do that. They waived the right to come to this court and asked for that relief under Keenan v. Tejeda. All right. Thank you, Mr. Payne. Mr. Pronsky, you've saved time for rebuttal. Thank you, Your Honors. I'll be brief. How about addressing this contention that we're, I think, hearing for the first time today that, well, Judge Lindsey not only ruled the summary judgment incorrect, but he granted the motion to dismiss, even though I can't find it in the order. Judge Lindsey did not grant the motion to dismiss. And I think the whole issue on the motion to dismiss is a red herring. That was a 12B6 motion that was brought in front of Judge Jernigan. It was never mentioned. We did not have a hearing set on that motion. And as a matter of cleanup, when she granted the order for relief, she may have entered an order dismissing or denying that 12B6 motion. But that was a motion for failure to state a claim. It was never converted into a summary judgment proceeding. Was it urged to Judge Lindsey? No, it was not. It was not urged to Judge Lindsey at all. It was not part of the appeal. So I think what they're trying to do is find some basis to get around the disposition issue that we've raised. But it's really a red herring. It was a 12B6 failure to state a claim on the pleadings. And it was not turned into any kind of a summary judgment proceeding. There was no evidence taken on it in the form of summary judgment evidence or otherwise. If that's what's needed, I guess I'm trying to understand the contours of this bona fide dispute. I assume, like, if we sent you back, you'd come forward with these time records and fee contracts and so forth. And then what would they be required to do, in your view? Well, Your Honor, that's a good question. Certainly more than just say there's a dispute. For example, Mr. Would they need an expert report on the malpractice you allegedly committed? Would they need to show that, you know, $700 an hour is some unreasonable fee or whatever? I know there was some cap of $400, et cetera, et cetera. Well, the case law says they don't have to have a full trial. But certainly the case law also says that they can't raise conclusory issues. A counterclaim in and of itself is not enough. Evidence and affidavit from them saying that they dispute the fees is not enough. There has to be some development of that issue at trial. That's what I'm saying. What would that be? What would that look like? It would look like, I would call it sort of an abbreviated trial where you would actually try the issues, not to the extent you would in a state court over a period of days, but perhaps in a matter of hours, but certainly develop those issues from an evidentiary standpoint. Now, is it true that you've already litigated this in state court? My law firm is one of the eight petitioning creditors, and we've had a lawsuit on file for a long time. And when Judge Jernigan dismissed this case, we went to the state court, as Mr. Simon said. We got a summary judgment for the full amount of our claim in front of Judge Ginsburg in the state district court. He had no problem. And that goes to— And that's on appeal to the Dallas Court of Appeals? They've appealed that, and they've superseded it with cash, actually. Pardon me? Why didn't that protect you? Why aren't you done? Well, perhaps I— Besides loving to come in front of us. Well, perhaps I would be, but, Your Honor, I have a dual role as not just a representative of my law firm, but I'm also the attorney for all eight petitioning creditors, and I don't think I'd have the ability to do that even if I wanted to on my own behalf. But I think what that goes to is it shows that when I tell you we went to the bankruptcy court with a petition, and we had eight petitioning creditors of over $800,000, and we thought we were going to have no problem showing that these are valid claims, we chose what we thought was the simplest route to get from A to B, which is to say the district court order is valid. But as Mr. Simon—I wasn't going to mention it because it's beyond the record, but since Mr. Simon told you we got a judgment, it shows you how simple it would have been in front of Judge Jernigan had the stipulation been met and had we been able to come back and further develop the bona fide dispute. For instance, I would have made the same summary judgment case in front of Judge Jernigan that I made in front of Judge Ginsburg where he had no problem granting a summary judgment. These were simple cases, and they did raise malpractice, breach of fiduciary duty. There were like 10 or 12 different things. But did they have like an expert reporter? It's not easy to win summary judgment in state court, so the fact that you did means they really didn't have anything in response. Well, it's somewhat complicated, but we did obtain summary judgment, and I think Mr. Simon has admitted we did get a judgment against him. So long story for the answer, and I apologize for that. I wanted to briefly talk about the injunction. First of all, there is a case that we cite in our briefing, the Jordan case, and that case basically says that the case could not be more on point. I'm out of time. If you'd like, I can finish that. You're out of time, and your case is under submission. Thank you, Mr. Proctor. Thank you very much. Court will take a brief recess before hearing the final case.